UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No.:

**JONATHAN PONCE,**

    Plaintiff,

v.

**FLORIDA ATLANTIC UNIVERSITY BOARD OF TRUSTEES,**

    Defendant.

_____

**COMPLAINT**

Plaintiff, JONATHAN PONCE (hereinafter "PONCE"), by counsel, sues the Defendant, FLORIDA ATLANTIC UNIVERSITY BOARD OF TRUSTEES (herein "FAU"), for violations of Title IX of the Education Amendments of 1972. In support thereof, Plaintiff asserts:

Parties

1. PONCE is a resident of Broward County, Florida, over the age of eighteen years.

2. PONCE is a transgendered male, born female, and was and is employed as a police detective with the Police Department at FAU. As such, PONCE is and was a member of a group protected under Title IX.

3. At all times material hereto, FAU is and was authorized, operating, and licensed to do business in the State of Florida.

4. FAU is an accredited, public, not-for-profit university offering undergraduate, graduate, and professional degrees on several campuses. FAU receives federal financial assistance.

General Allegations

5. Title IX provides:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance.
>
> 20 U.S. Code § 1681

6. PONCE is male and transgender. When he began working at FAU, he had not begun his transition from female to male.

7. In April 2017, PONCE began his transition in his personal life as well as in his professional life.

8. He requested a meeting with Chief Brammer to inform him about his transition. During his meeting with the Chief, he wanted his wife, Amy Ponce, present for support and, since she also worked at the Police Department, this would be impacting her.

9. In the meeting, the Chief brought in former Deputy Chief Torsan Cowart (herein "TC") and Captain Larry Ervin without asking PONCE if he felt comfortable with them present. During the meeting, PONCE was told by the Chief and the others that they supported him and that they will start using "gender neutral" bathrooms.

10. The Department put a "Gender Neutral" sign on the single stall bathroom located in the lobby.

11. A few weeks after his meeting with the Chief, PONCE was approached by TC who said that the police department was creating an LGBTQ liaison and that the role was being given to PONCE because no one else would understand the issues better than he.

12. This position was never advertised to other officers; it was simply given to PONCE without him asking to become the LGBTQ liaison.

13. It was also never announced to the department as they do with all other promotions or new titles.

14. This created a very stressful time for PONCE because he was just starting his transition and being told to be the LGBTQ liaison only created more stress and anxiety.

15. However, at the time, PONCE showed much interest in it and asked for clarity several times what the position specifically entails and what he would be able to do as far as community outreach for the FAU LGBTQ community.

16. PONCE was never given any direction or answer, except for when they randomly needed him to attend an event so the police department could show they were there.

17. In 2018, PONCE worked on FAU PD case 18-0894 as a detective which resulted in the arrest of an FAU student for posting on twitter that he wanted to kill his professor. The post was brought up to the attention of the FAU Police Department and, as the newly appointed detective and only detective for the department, PONCE was assigned the case.

18. The Twitter account in question, "Cutie Claus", posted "Bey i gern fucking kill dis professor bey this is his confession to a premeditated murder".

19. Further investigation of the above Twitter profile revealed that the individual's profile was public. PONCE's investigation revealed the above Twitter profile was found to be associated with the FAU Caribbean Student Association (CSA). A World Wide Web search of FAU CSA revealed that the organization had an Instagram profile. On the FAU

CSA Instagram profile, @faucsa, there was a google form where all the members were listed. PONCE referenced all the names through the FAU database and was able to correlate the pictures and information provided to obtain the identity of the person who was associated with the above twitter account.

20. A few months later, during the 2019 annual award ceremony, another employee was given an award for "his hard work and dedication" to finding the identity of the FAU student. The actual investigation was done by PONCE.

21. On February 3, 2021, after being a detective for approximately three (3) years, PONCE saw the need for a Detective Sergeant in the agency. PONCE pitched the idea to his supervisor and also submitted a memorandum expressing his interest to the Chief. PONCE never heard back from the Chief.

22. On March 3, 2022, PONCE re-submitted a memorandum expressing his interest in the Detective Sergeant position.

23. At this time, PONCE had taken the promotional exam and passed. Once again, PONCE never heard back from the Chief.

24. On June 15, 2022, Chief Brammer sent an email with the subject line "Department Opportunities". The email was sent to all FAU PD sworn employees. The email stated that there were six available positions that he was looking to fill - 2 Sergeant positions, 2 Corporal positions, and 2 Lieutenant positions.

25. The following day, on June 16, 2022, while he was still eligible for promotion, PONCE sent out a memo telling Chief Brammer that he was interested in the Special Operations Sergeant position which was posted in Brammer's email. PONCE never heard back.

26. On August 6, 2022, PONCE was unable to attend the promotional exam because he was recovering from Covid. His test scores from August 2021 then expired, making him ineligible for promotion. Once PONCE returned to work, he was never asked if he wanted a make-up date for missing the exam since he was out sick.

27. On August 23, 2022, PONCE heard Detective Malara being congratulated across the hallway by one of the new assistant chiefs. When she walked into the office, PONCE asked her what she was being congratulated for. Malara said she was being promoted to Detective Sergeant. This was the position that PONCE had been trying to create. The Detective Sergeant position was never advertised.

28. Malara advised PONCE not to tell anyone because Assistant Chief Baker had instructed her not to tell anyone.

29. PONCE congratulated her and left the office to go into his vehicle because he had never felt so discriminated against and unwanted.

30. PONCE remembers seeing Captain Ervin and telling him that he needed to go home.

31. On the evening of August 23, 2022, AC Baker sent out a promotional email that stated that Detective Malara was being promoted to the rank of Sergeant and her assignment will be as the Special Operations Sergeant - the other position PONCE had applied for while he was eligible and while that position was promoted in the Chief's email.

32. After reading the email from Baker, PONCE was confused. The next day PONCE asked Malara for clarification. Malara said that before Baker sent out the email advising her promotion to Special Operations Sergeant, she had been called to his office and was told that they had changed their minds on promoting her to Detective Sergeant and were instead

going to promote her to Special Operations Sergeant. This made PONCE feel even more discriminated against because at this point they had given Malara - the newest Detective and someone PONCE had recently trained – two (2) positions he had formally shown interest in when he was eligible for promotion.

33. On August 19, PONCE submitted a letter of grievance through the PBA and by the following Monday, August 22, 2022, Malara had been advised via email that she was being changed to night shift sergeant and that Rickey Robinson was being promoted to Special Operations Sergeant instead, so that he could "keep his K9".

34. The explanation for these events is that the Department refused to promote PONCE while he was to only officer eligible for promotion and while the Department had needs which were not being met.

    a. Malara, when she was first told she was to be promoted to Detective Sergeant, was the most junior detective and still being trained by PONCE.

    b. Immediately after PONCE grieved Malara's promotion, it was changed from Special Operations Sergeant to night shift Sergeant, because, according to AC Baker, Officer Rickey Robinson would be able "to keep his dog".

35. During PONCE's time with FAU, all detectives, whether they have come before or after PONCE, have been promoted after passing their Sergeant's exam. PONCE is the only detective that has not been promoted.

36. The Department deliberately withheld promotional opportunities when PONCE was the only officer eligible for promotion to Sergeant.

37. As such, the discriminatory animus of the Department which did not want to promote a transgender detective, impacted not only PONCE, the intended target, but the safety and well-being of the FAU community in general.

## Count I
## Violation of Title IX

38. Plaintiff realleges ¶ 1-35.

39. As such, gender stereotyping was a determinative factor in why PONCE was not promoted, and in the resulting emotional harm set forth below in violation of the Florida Civil Rights Act.

40. As a direct and proximate result of FAU's unlawful and discriminatory acts, PONCE was denied promotion and caused to suffer loss of earnings, loss of earning capacity, loss of enjoyment of life, injury to reputation, and severe emotional distress.

41. PONCE has hired counsel and is obligated to compensate them for their services.

42. WHEREFORE, Plaintiff prays that this Court:

    (a) Declare FAU's conduct to be violations of PONCE's rights under Title IX;

    (b) Award restitution damages to loss of earnings for all lost wages including merit increases, loss of promotional opportunity, benefits, and other remuneration;

    (c) Order the promotion of PONCE to Detective Sergeant;

    (d) Award compensatory damages to PONCE for his pain and suffering;

    (e) Award PONCE his costs and attorneys' fees;

    (f) Award PONCE pre-judgment and post-judgment interest as permitted by

      applicable law; and

   (g) Grant such other and further relief as may be deemed just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury of all issues so triable as a matter off of right

**DATED OCTOBER 6, 2022**

BY: */s/ G. Ware Cornell, Jr.*
G. Ware Cornell, Jr.
Fla. Bar No.: 203920
ware@warecornell.com
**CORNELL & ASSOCIATES, P.A.**
*Counsel for Plaintiff*
2645 Executive Park Drive
Weston, Fla. 33331
Tel: (954) 618-1041
