**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 9:22-cv-81546-MIDDLEBROOKS

JONATHAN PONCE,

    Plaintiff,

v.

FLORIDA ATLANTIC UNIVERSITY
BOARD OF TRUSTEES,

    Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COUNT I OF SECOND AMENDED COMPLAINT**

THIS CAUSE comes before me on Defendant Florida Atlantic University Board of Trustees' ("FAU") Partial Motion to Dismiss Count I of Plaintiff Jonathan Ponce's ("Plaintiff") Second Amended Complaint (DE 41). I have read the Motion (DE 44), Plaintiff's Response in Opposition (DE 47), and Defendant's Reply (DE 48). For the following reasons, Defendant's Motion is granted.

**BACKGROUND**

The facts of this case are well-known to the parties and this Court but I briefly re-state them, along with a procedural history of the case, as it is relevant to the present order. This suit is a two-count action for sex-based employment discrimination, brought under Title IX of the Education Amendments of 1972 ("Title IX") and Title VII of the Civil Rights Act of 1991 ("Title VII"). The suit is brought by Plaintiff who is a transgender male, born female, and is employed as a police detective within the Police Department at Defendant FAU. (DE 41 at ¶ 2). Plaintiff cites

to numerous episodes of being passed up for promotions and other public recognition within the police force which he alleges were the result of "gender stereotyping." (*Id.* at ¶ 41).

While initially working at FAU, Plaintiff had not begun his transition from female to male; his transition, both personally and professionally, began in April 2017. (*Id.* at ¶¶ 8-9). During this process, it was well-known to his superiors in the Department that Plaintiff was transitioning to becoming a male and was also a member of the LGBTQ community. (DE 41 at ¶¶ 9-13). Without notice, Plaintiff was given the role of LGBTQ liaison, a position that had just been created within the police force, which caused him some stress. (*Id.* at ¶¶ 13, 16). The real tension at the Department, according to Plaintiff, began when the FAU campus police apprehended an individual who had threatened to kill a professor. (*Id.* at ¶¶ 19-22). Plaintiff had conducted the actual investigation to identify the individual, yet another employee was given an award for his hard work in identifying the student. (*Id.* at ¶¶ 19-22). Plaintiff subsequently applied for numerous promotions within the police force, including Detective Sergeant and Special Operations Sergeant. (*Id.* at ¶ 34). According to Plaintiff, his superiors were very much aware of his interest in advancing within the force, and instead promoted all his colleagues, who were cis-gender, meaning their gender corresponded with the sex they were identified as at birth. (*See id.* at ¶¶ 23-36). Plaintiff claims he was passed up despite numerous submitted memoranda indicating his interest to the Chief, a passed promotional exam, and Plaintiff's repeated inquiries into the openings. (*See id.* at ¶¶ 23-38). This led Plaintiff to conclude that his employer was discriminating against him because of his transgender status. (*Id.* at ¶ 38).

On January 5, 2023, Plaintiff filed his First Amended Complaint asserting claims under

Title IX[1] (Count I) and Title VII (Count II). (DE 23). On January 19, 2023, Defendant filed a Motion to Dismiss, arguing that Plaintiff's Title IX claim was preempted by Title VII and that Plaintiff failed to state a claim under Title VII. (DE 32). This Court granted the Motion in its entirety on May 12, 2023 (DE 39 at 12) but allowed Plaintiff an opportunity to re-file an amended complaint by May 25, 2023, which he did on that day. (DE 41). The present Motion to Dismiss is brought by Defendant who asks me to solely dismiss Count I, the Title IX claim, under the same preemption analysis that it succeeded on in its first Motion to Dismiss. (DE 44 at 1-2).[2] Plaintiff, on the other hand, has alleged that a recent Supreme Court decision of *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 134 S.Ct. 1444 (2023) supports his argument that Title IX is not preempted by Title VII. For the following reasons, I am unconvinced. I agree with Defendant, and rule in its favor.

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the allegations in a complaint. Fed. R. Civ. P. 12(b)(6). In assessing legal sufficiency, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental*

---

[1] Count I was titled "Violation of Title IX," but the allegations set forth underneath the heading purport to state a "violation of the Florida Civil Rights Act." (DE 23, Am. Compl. ¶ 41). In my previous order, I noted that Defendant had not raised this issue, and both sides assume Plaintiff is raising a claim under Title IX. (*See* DE 39, n.1). The same logic applies here as the Second Amended Complaint contains the exact same language as the First Amended Complaint. (DE 41, ¶ 40).

[2] Defendant has admitted that Plaintiff has cured the deficiencies found by the Court in the Title VII (Count II) claim (DE 44 at 2) and has separately filed an Answer and Affirmative Defenses. (*See* DE 45). Thus, I do not address Count II at all in this Order.

*Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and assume the truth of the plaintiff's factual allegations. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). However, pleadings that "are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678; *see also Einhorn v. Axogen, Inc.*, 42 F.4th 1218, 1222 (11th Cir. 2022) (stating that an unwarranted deduction of fact is not considered true for purposes of determining whether a claim is legally sufficient). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise [the plaintiff's] right to relief above the speculative level." *Id.*

## **DISCUSSION**

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" because of a protected trait including race, color, sex, and national origin. 42 U.S.C § 2000e-2(a)(1). *See Nurse v. City of Alpharetta*, 775 F. App'x 603, 606 (11th Cir. 2019) ("An employer may run afoul of Title VII when it "has 'treated [a] particular person less favorably than others because of' a protected trait." (citation omitted)). Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" because of a protected trait including race, color, sex, and national origin. 42 U.S.C

4

§ 2000e-2(a)(1). *See Nurse v. City of Alpharetta*, 775 F. App'x 603, 606 (11th Cir. 2019) ("An employer may run afoul of Title VII when it "has 'treated [a] particular person less favorably than others because of' a protected trait." (citation omitted)). Previously, I addressed the question that is raised before me now: whether Plaintiff, as an employee of Defendant, has a private right of action under both Title IX and Title VII for complaints of sex discrimination. (*See* DE 39 at 9-12).

As I stated in my previous analysis, there is a Circuit split, and neither the Supreme Court, nor the Eleventh Circuit has determined whether Plaintiff can proceed under both Title IX and Title VII. *See Heatherly v. Univ. of Ala. Bd. of Trustees*, 778 Fed. Appx. 690, 694 (11th Cir. 2019) ("[w]e therefore need not reach the question – as yet undecided in this Circuit – whether Title VII preempts Title IX when a plaintiff alleges employment discrimination on the basis of sex and Title VII afford a parallel remedy."). Defendant previously pointed out that the Fifth and Seventh Circuits agreed that Title VII provides the only remedy for employees alleging sex discrimination in federally funded educational institutions. *See Lakoski v. James*, 66 F.3d 751, 753 (5th Cir. 1995) (holding that Title VII provides the "exclusive remedy for individuals alleging employment discrimination on the basis of sex in federally funded educational institutions."); *Waid v. Merrill Area Pub. Schs.*, 91 F.3d 857, 861 (7th Cir. 1996) (holding that Title VII preempts any claim for equitable relief based on employment discrimination under Title IX).

Plaintiff also helpfully pointed to numerous district court decisions within the Eleventh Circuit holding that Title VII precluded a Title IX claim for an individual alleging employment discrimination, where the individual was an employee but not also a student of the educational institution. (DE 32 at 4-6). Thus, I followed *Lakoski*'s reasoning, as well as that of our sister district courts to determine that Title VII was the exclusive remedy for Plaintiff's claim of employment discrimination on the basis of sex in a federally funded educational institution and I dismissed

Count I without prejudice. (DE 39 at 11-12).

I turn now to Plaintiff's current briefing to see whether I should digress from my previous reasoning. I do not see any reason to.

Plaintiff now makes his preemption arguments premised upon some excerpted language from the recent Supreme Court decision of *Health & Hosp. Corp. of Marion Cnty. V. Talevski*, 134 S.Ct. 1444 (2023), provided below. Yet, by his own admission, the decision has nothing to do with Title XI and VII. (DE 47 at 1-2). Indeed, the case answered the question of whether a nursing home plaintiff could bring a 42 U.S.C. § 1983 claim through violations of the Federal Nursing Home Reform Act ("FNHRA"). *See id.* at 1446. The Court ruled that this was possible, and thus Plaintiff argues that the following language in *Talevski* gives him a firm basis for his argument:

> Even if a statutory provision unambiguously secures rights, a defendant "may defeat t[he] presumption by demonstrating that Congress did not intend" that § 1983 be available to enforce those rights. *Rancho Palos Verdes*, 544 U.S., at 120, 125 S.Ct. 1453.13 For evidence of such intent, we have looked to "the statute creating the right." *Ibid*. A statute could, of course, expressly forbid § 1983's use. *Fitzgerald*, 555 U.S., at 252, 129 S.Ct. 788; *Rancho Palos Verdes*, 544 U.S., at 120, 125 S.Ct. 1453. Absent such a sign, a defendant must show that Congress issued the same command implicitly, by creating "a 'comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.'" *Id.*, at 120, 125 S.Ct. 1453. Only the latter path is at issue here. Our precedent outlines what HHC must show to traverse the implicit-preclusion path. "'The crucial consideration'" is whether "Congress intended a statute's remedial scheme to 'be the exclusive avenue through which a plaintiff may assert [his] claims.'" *Fitzgerald*, 555 U.S., at 252, 129 S.Ct. 788 (quoting *Smith v. Robinson*, 468 U.S. 992, 1009, 1012, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984) (emphasis added)); *Fitzgerald*, 555 U.S., at 252, 129 S.Ct. 788 (framing "'[t]he critical question'" as "'whether Congress meant [the statute's remedial scheme] to coexist with ... a § 1983 action'" (quoting *Rancho Palos Verdes*, 544 U.S., at 120–121, 125 S.Ct. 1453))….Put another way, the inquiry boils down to what Congress intended, as divined from text and context. The application of the traditional tools of statutory construction to a statute's remedial scheme may reveal no incompatibility between the enforcement scheme that

6

> Congress crafted in the rights-conferring statute and enforcement under § 1983, or it may uncover sufficient incompatibility to make manifest Congress's intent to preclude § 1983 actions.

*Talevski*, at 1359-60.

Plaintiff argues that the same logic applies here. If Congress had meant for Title VII to preempt a Title XI claim, or vice versa, it would have been written within the legislation. (DE 47 at 2). I am unconvinced of this argument, given the case law that I have already discussed in my previous order, and the fact that the holding of *Talevski* only applies to Section 1983 claims and FNHRA. I also have read Plaintiff's two other cited cases, *Davis v. Monroe Cnty. Bd. of Educ.*, 120 F.3d 1390, 1046 (11th Cir. 1997), *rev'd sub nom. Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999) and *Dickerson v. Alachua Cnty. Com'n*, 200 F.3d 761, 765 (11th Cir. 2000) and deem them irrelevant to the present issue. *Dickerson* held, in part, that Title VII did not preempt a constitutional cause of action under § 42 U.S.C. § 1985(3). 200 F.3d at 766-67. And Plaintiff has misinterpreted the holding of *Monroe Cnty. Bd. of Educ*. The case dealt with the scope of student-on-student harassing behavior that amounted to discrimination for purposes of Title IX and "whether a [school] district's failure to respond to student-on-student harassment in its schools can support a private suit for money damages [under Title IX]." *Monroe Cnty. Bd. of Educ.*, 526 U.S. at 639. The Court determined that a Title IX claim could proceed, but "only for harassment that is so severe, pervasive and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Id.* at 633.

Thus, none of these cases cited by Plaintiff provide me any reason to abandon my previous ruling. There still is no binding precedent from the Eleventh Circuit or the Supreme Court, and I have already concluded that the claim is preempted based upon the Fifth Circuit's persuasive reasoning in *Lakoski*.

## CONCLUSION

Based upon the foregoing, it is **ORDERED AND ADJUDGED** that:

(1) Defendant's Motion to Dismiss (DE 44) is **GRANTED**.

(2) Count I of the Second Amended Complaint (DE 41) is **DISMISSED** with prejudice.

**SIGNED** in Chambers at West Palm Beach, Florida this 26th day of July, 2023.

Donald M. Middlebrooks
United States District Judge

cc:   Counsel of Record